UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LISA HOPE ANTOINE, | } |
| Plaintiff, | } |
| v. | } Case No.: 2:17-CV-1859-RDP |
| EUGENE RAYMOND VERIN, et al., | } |
| Defendants. | } |

**MEMORANDUM OPINION**

This matter is before the court on Defendants' Motion to Dismiss. (Doc. # 14). For the reasons explained below, the Motion (Docs. # 14) is due to be granted.

**I.     Background**[1]

On November 3, 2017, Plaintiff Lisa Hope Antoine ("Plaintiff") filed this Complaint against the Honorable Eugene Raymond Verin ("Judge Verin"), the Honorable Terri Willingham Thomas ("Judge Thomas"), the Honorable William Cooper Thompson ("Judge Thompson"), the Honorable Craig Sorrell Pittman ("Judge Pittman"), the Honorable Terry Allen Moore ("Judge Moore"), the Honorable William Scott Donaldson ("Judge Donaldson"), the Honorable James Allen Main ("Judge Main"), the Honorable Michael Franklin Bolin ("Judge Bolin"), the Honorable Billy Glenn Murdock ("Judge Murdock"), the Honorable Alisa Kelli Wise ("Judge Wise"), and the Honorable Tommy Elias Bryan ("Judge Bryan," and collectively "Defendants"). (Doc. # 1). In the Complaint, Plaintiff alleges that she filed a complaint for trespass, injury to real property, and nuisance in the Circuit Court of Jefferson County on December 11, 2009. (*Id.*

---

[1] "A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true." *Mays v. U.S. Postal Serv.*, 928 F. Supp. 1552, 1557-58 (M.D. Ala. 1996). Thus, for the purpose of resolving Defendants' Motion to Dismiss under Rule 12(b)(6), the court treats the facts alleged in the Complaint (Doc. # 1) as true.

at p. 5). On March 15, 2011, Plaintiff alleges that Judge Verin denied Plaintiff's claims for relief, ordered her to pay the adjoining property owner compensatory damages of $35,000, enjoined Plaintiff from obstructing the flow of water draining from adjoining properties, and ordered Plaintiff to construct and maintain a drain. (*Id.* at p. 5-6).

On November 12, 2015, Judge Verin denied Plaintiff's motion to set aside judgment. (*Id.* at p. 6). Plaintiff alleges that she appealed and, on July 15, 2016, Judge Thomas, Judge Thompson, Judge Pittman, Judge Moore, and Judge Donaldson affirmed Judge Verin's ruling. (*Id.*). Plaintiff further alleges that, on October 14, 2016, Judge Main, Judge Bolin, Judge Murdock, Judge Wise, and Judge Bryan denied her petition for writ of certiorari. (*Id.*). Plaintiff claims that Defendants violated her surface water rights and equal protection rights under the Fourteenth Amendment. (*Id.* at p. 4-6).

Plaintiff "asks the court to order [Judge] Verin to set aside his judgment of March 15, 2011" and "to order [Judge] Verin to order the current adjoining property owner to pay Plaintiff $178,900 in actual damages for property value depreciation resulting from the flooding of her property and punitive damages of $357,800 for intentionally violating her surface water rights on her property." (*Id.* at p. 5-6). Plaintiff also asks the court (1) to order "attorney Oscar William Adams III to return $16,736 in attorney's fees and costs to Plaintiff;" (2) to order "Oxmoor Preservation/One, LLC to return $90,926.88 in compensatory damages, attorney's fees, interest and costs to Plaintiff; and (3) for reimbursement of all litigation costs. (*Id.*). Attorney Oscar William Adams III and Oxmoor Preservation/One, LLC are not parties to this case.

On November 29, 2017, Defendants filed the instant Motion to Dismiss. (Doc. # 14). Plaintiff filed her Opposition to Defendants' Motion to Dismiss on December 11, 2017. (Doc. # 17).

## II. Standards of Review

Because Defendants' Motion to Dismiss (Doc. # 14) is based on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the court outlines the standards of review for both Rule 12(b)(1) and Rule 12(b)(6) motions.

### A. Rule 12(b)(1) Motions

Challenges to subject matter jurisdiction under Rule 12(b)(1) can exist in two different forms: facial attacks and factual attacks. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009). When presented with a facial attack on a plaintiff's complaint, a court determines whether the complaint has sufficiently alleged subject-matter jurisdiction. *Sinaltrainal*, 578 F.3d at 1260. The court proceeds as if it were evaluating a Rule 12(b)(6) motion, views the complaint in the light most favorable to the plaintiff, and accepts any well-pled facts alleged in the complaint as true. *Id*.

Factual attacks, on the other hand, question "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id*. (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). When a court is confronted with a factual attack, the standard of review diverges.

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to [P]laintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Lawrence*, 919 F.2d at 1529 (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)). "When a district court has pending before it both a 12(b)(1)

motion and a 12(b)(6) motion, the generally preferable approach, if the 12(b)(1) motion essentially challenges the existence of a federal cause of action, is for the court to find jurisdiction and then decide the 12(b)(6) motion." *Jones v. State of Ga.*, 725 F .2d 622, 623 (11th Cir. 1984).

B. **Rule 12(b)(6) Motions**

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l. Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Candield, Paddock & Stone, PLC*, 413 Fed. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Twombly*, 550 U.S. at 556. Further, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 682). If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 556.

### III.  Analysis

Defendants argue that Plaintiff's claims should be dismissed for (at minimum) two principle reasons. First, the court lacks jurisdiction to consider Plaintiff's claims. (Doc. # 14). And, second, Defendants are entitled to judicial immunity. (*Id.*). The court examines Defendants' two arguments, in turn.

####    A.     The Court Lacks Jurisdiction to Consider Plaintiff's Claims for Declaratory or Injunctive Relief

As a general rule, a federal court has no jurisdiction or right to grant relief under § 1983 with respect to challenges to state court decisions, in particular cases arising out of state judicial proceedings, even if those challenges allege that the state court's action was unconstitutional. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Datz v. Kilgore*, 51 F.3d 252 (11th Cir.

5

1995); *Berman v. Fla. Bd. of Bar Exam'rs*, 794 F.2d 1529 (11th Cir. 1986). The *Rooker-Feldman* doctrine precludes "lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced." *Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324, 1330 (11th Cir. 2010) (citations and internal quotation marks omitted); *see also Nicholson v. Shafe*, 558 F.3d 1266, 1270 (11th Cir. 2009) ("Generally speaking, the *Rooker-Feldman* doctrine bars federal district courts from reviewing state court decisions."). "This is because appellate authority over final state-court decisions rests with the Supreme Court of the United States." *Carter v. Killingsworth*, 540 Fed. App'x 912, 914 (11th Cir. 2013). Simply put, "[t]he doctrine bars the losing party in state court from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Brown*, 611 F.3d at 1330 (citation and internal quotation marks omitted).

The Eleventh Circuit has utilized a four-factor test to determine whether federal jurisdiction is barred under the *Rooker-Feldman* doctrine:

> (1) the party in federal court is the same as the party in state court; (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment."

*Nicholson*, 558 F.3d at 1272 (citations omitted). All of these factors clearly apply in this case: (1) Plaintiff was the plaintiff in the underlying state action; (2) the prior state court ruling was final; (3) Plaintiff is merely seeking review of the underlying state court rulings, not relief under

federal claims; and (4) the issue Plaintiff raises before this court is the exact issue that Plaintiff alleges was already decided by the state court. (*See* Doc. # 1).

Although *Rooker-Feldman* is a narrow doctrine, "[t]his case calls for a paradigmatic application of the *Rooker-Feldman* doctrine." *McCorvey v. Weaver*, 2014 WL 5392083 * 4 (S.D. Ala. 2014). Plaintiff's Complaint leaves no doubt that Plaintiff is effectively (if not explicitly) asking this court to act as a *de facto* appellate court. (Doc. # 1). Specifically, Plaintiff asks this court to order Judge Verin to reverse his state court holdings against Plaintiff. (Doc. # 1 at p. 5-6). The claims asserted by Plaintiff in this case present precisely the type of jurisdictional overreach that the *Rooker-Feldman* principles forbid. *See Nicholson*, 558 F.3d at 1270; ); *see also McCorvey*, 2014 WL 5392083 * 4 ((("[T[his case is a textbook example of the kind of circumstance [the *Rooker-Feldman* doctrine] was designed to cover. [Plaintiff] is a state-court loser . . . who now wants this Court to review and reject the state court's judgment . . . . The *Rooker-Feldman* doctrine deprives this Court of jurisdiction to do so.").

Although the *Rooker-Feldman* doctrine deprives this court of jurisdiction to hear Plaintiff's claims for declaratory or injunctive relief, the doctrine does not necessarily dispose of Plaintiff's demand for money damages (to the extent that Plaintiff demands such relief from the named Defendants). *See Nicholson*, 558 F.3d at 1270; *Sibley v. Lando*, 437 F.3d 1067, 1071 (11th Cir. 2005). But, as explained below, Plaintiff's other claims are due to be dismissed on other grounds.

B. **Plaintiff's Other Claims against Defendants Are Barred by Judicial Immunity**

Defendants argue that, because it is clear from the face of the Complaint that all of the claims alleged against Defendants are for actions taken while acting in their official judicial capacities, they are each entitled to absolute judicial immunity. (Doc. # 14 at p. 7-8). The court

agrees. Judicial immunity defeats a § 1983 claim for money damages brought against a state court judge in either his official or individual capacity. *Sibley*, 437 F.3d at 1074 (citing *Simmons v. Conger*, 86 F.3d 1080, 1084-85 (11th Cir. 1996)). The policy behind immunity does not merely extend to lawsuits; it also extends to protection against discovery and the requirement to defend against a suit. *Lassiter v. Alabama A&M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc).

In applying the test for judicial immunity, "the first question is whether the judge dealt with the plaintiff in his judicial capacity." *William B. Cashion Nev. Spendthrift Trust v. Vance*, 552 Fed. App'x 884, 886 (11th Cir. 2014). "Whether a judge's actions were made while acting in his judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." *Sibley*, 437 F.3d at 1070. "If [the judge] did act in his judicial capacity, then we ask whether the judge acted in the clear absence of all jurisdiction." *William B. Cashion Nev. Spendthrift Trust*, 552 Fed. App'x at 886. "If the judge acted in his judicial capacity, and if he did not act in the clear absence of all jurisdiction, then he is entitled to judicial immunity, as a matter of law." *McCorvey*, 2014 WL 5392083 at * 2 (citing *Washington Mut. Bank v. Bush*, 220 Fed. App'x 974, 975 (11th Cir. 2007) ("Judicial immunity applies when (1) the judge dealt with the plaintiff in his judicial capacity and (2) the judge did not act in the clear absence of all jurisdiction.") (citation and internal marks omitted)).

Here, the Complaint's allegations involve Judge Verin's rulings in a state court action that was before him; Judge Thomas, Judge Thompson, Judge Pittman, Judge Moore, and Judge

Donaldson affirmation Judge Verin's ruling; and Judge Main, Judge Bolin, Judge Murdock, Judge Wise, and Judge Bryan denial of Plaintiff's petition for writ of certiorari. (Doc. # 1 at p. 5-6). These allegations confirm that Defendants' actions and rulings challenged by Plaintiff here were all taken in Defendants' judicial capacities. *See Sibley*, 437 F.3d at 1070. Therefore, Defendants are entitled to judicial immunity unless they acted in the clear absence of all jurisdiction.[2] *See William B. Cashion Nev. Spendthrift Trust*, 552 Fed. App'x at 886. There are absolutely no facts alleged in the Complaint that show Defendants acted in the clear absence of all jurisdiction; rather, Plaintiff's own allegations make clear that Defendants acted well within their respective jurisdictions. As such, the court concludes that the doctrine of judicial immunity bars Plaintiff's claims against Defendants.

## IV. Conclusion

For the reasons stated above, Defendants' Motion to Dismiss (Doc. # 14) is due to be granted. Because Plaintiff cannot plausibly state a claim against Defendants regarding Plaintiff's displeasure with the results of the underlying state court action, Plaintiff's Complaint (Doc. # 1) is due to be dismissed with prejudice. An Order consistent with this Memorandum Opinion will be entered contemporaneously.

**DONE** and **ORDERED** this December 19, 2017.

																	_____
																	**R. DAVID PROCTOR**
																	UNITED STATES DISTRICT JUDGE

---

[2] To be clear, "[j]udges do not lose their judicial immunity even if they act in absence of jurisdiction as long as they do not have knowledge that they lack jurisdiction or act in the face of clearly valid statutes or case law expressly depriving them of jurisdiction." *Franklin v. Arbor Station, LLC*, 549 Fed. App'x 831, 834 (11th Cir. 2013) (citation and internal marks omitted).